UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GERALD MARGOLIS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FLY LEASING LIMITED, COLM BARRINGTON, and GARY DALES,<br><br>Defendants. | Case No.<br><br>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br><u>DEMAND FOR JURY TRIAL</u> |

## CLASS ACTION COMPLAINT

Plaintiff Gerald Margolis ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding FLY Leasing Limited ("FLY" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired FLY securities between May 8, 2014 and March 7, 2016, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. FLY, together with its subsidiaries, engages in purchasing and leasing commercial aircraft under multi-year contracts to various airlines worldwide. As of December 31, 2014, the Company's aircraft portfolio consisted of 127 commercial jet aircraft, including 116 narrow-body passenger aircraft and 11 wide-body passenger aircraft.

3. FLY was founded in 2007 and is headquartered in Dun Laoghaire, Ireland. The Company's stock trades on the NYSE under the ticker symbol "FLY."

4. Throughout the Class Period, defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) during fiscal years 2014 and 2015, FLY had engaged in improper accounting with respect to intangible assets and liabilities for aircraft acquired with in-place leases; and (ii) as a result of the foregoing, FLY's public statements were materially false and misleading at all relevant times.

5. On March 8, 2016, FLY disclosed that the Company and the SEC were discussing FLY's accounting policy for business combinations, including FLY's accounting policy for intangible assets and liabilities for aircraft acquired with in-place leases. FLY stated that "if it is determined after the conclusion of the [SEC's] review that FLY should separately recognize other intangible assets or liabilities from what has been previously recorded, the impact could be

material to FLY's previously issued consolidated financial statements and require modification to its accounting for the current and prior year results," and that, "as a result of the ongoing discussions with the [SEC], FLY may not be able to timely file its Annual Report on Form 20-F for the year ended December 31, 2015."

6. On this news, FLY stock fell $1.12 per share, or 8.2%, to close at $12.47 on March 8, 2016.

7. As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 8j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

10. Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as the Company's stock trades on the NYSE, located within this District.

11. In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

12.     Plaintiff, as set forth in the attached Certification, acquired FLY securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant FLY is incorporated in Bermuda, and the Company's principal executive offices are located at West Pier, Dun Laoghaire, Ireland.

14.     Defendant Colm Barrington ("Barrington") has served at all relevant times as the Company's Chief Executive Officer.

15.     Defendant Gary Dales ("Dales") has served at all relevant times as the Company's Chief Financial Officer.

16.     The defendants described in ¶¶ 14-15 are hereinafter collectively referred to as the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background**

17.     FLY, together with its subsidiaries, engages in purchasing and leasing commercial aircraft under multi-year contracts to various airlines worldwide. As of December 31, 2014, its aircraft portfolio consisted of 127 commercial jet aircraft, including 116 narrow-body passenger aircraft and 11 wide-body passenger aircraft.

**Materially False and Misleading Statements Issued During the Class Period**

18.     The Class Period begins on May 8, 2014, when FLY issued a press release and filed a Form 6-K with the SEC announcing its financial and operating results for the quarter ended March 31, 2014 (the "Q1 2014 6-K"). For the quarter, FLY reported net income of $3.6

million, or $0.07 per diluted share, compared to net income of $32.8 million, or $1.15 per diluted share for the same period in the prior year.

19. In the Q1 2014 6-K, defendant Barrington stated, in part:

In the first four months of the year, we have added seven aircraft to the fleet, with a consequent growth in top line revenues. . . . We are making strong and steady progress in achieving our target of 15% growth in our fleet this year, having already spent $176 million. We have a robust acquisition pipeline and our continued deployment of capital will drive further revenue and earnings growth as the year progresses.

20. On July 31, 2014, FLY issued a press release and filed a Form 6-K with the SEC announcing its financial and operating results for the quarter ended June 30, 2014 (the "Q2 2014 6-K"). For the quarter, FLY reported net income of $21.7 million, or $0.51 per diluted share, compared to net income of $5.9 million, or $0.20 per diluted share for the same period in the prior year.

21. In the Q2 2014 6-K, defendant Barrington stated, in part:

We continue to find attractive acquisition opportunities in the sale and leaseback and secondary markets. . . . We have already acquired 12 aircraft for more than $329 million this year and have an identified pipeline of more than $450 million. At June 30, we had unrestricted cash of $253 million and $325 million available under our acquisition facility, giving us ample capacity to fund our pipeline. As a result, we are confident of achieving our 15% net fleet growth target this year.

22. On November 13, 2014, FLY issued a press release and filed a Form 6-K with the SEC announcing its financial and operating results for the quarter ended September 30, 2014 (the "Q3 2014 6-K"). For the quarter, FLY reported net income of $15.4 million, or $0.37 per diluted share, compared to net income of $0.3 million, or zero per diluted share for the same period in the prior year.

23. In the Q3 2014 6-K, defendant Barrington stated, in part:

FLY had another strong quarter, with fleet utilization of 100% and revenue growth of more than 30%. . . . We have grown our fleet to 121 aircraft with the

acquisition of five aircraft in the third quarter, maintaining our average fleet age at just over eight years and increasing our average lease term to approximately five years.

FLY is continuing its growth trajectory, with about $1 billion of aircraft to be purchased in 2014. We are on track to beat our 2014 fleet growth target of 15%, and are targeting a further 15% fleet growth in 2015. Our recent issuance of $400 million of unsecured notes, along with $327 million of remaining capacity in our acquisition facility, provides us with ample resources to fund this program.

24.     On March 11, 2015, FLY issued a press release and filed a Form 6-K with the SEC announcing its financial and operating results for the quarter and year ended December 31, 2014 (the "2014 6-K"). For the quarter, FLY reported net income of $15.5 million, or $0.37 per diluted share, compared to net income of $13.4 million, or $0.32 per diluted share for the same period in the prior year. For 2014, FLY reported net income of $56.1 million, or $1.32 per diluted share, compared to net income of $52.5 million, or $1.50 per diluted share for 2013.

25.     In the 2014 6-K, defendant Barrington stated, in part:

FLY is reporting strong fourth quarter and full year results. Our fourth quarter and full year revenues are up 40% and 15%, respectively, driven by the successful rejuvenation of our fleet through the acquisition of newer aircraft and the sale of older models. This strategy has lowered the average age of our fleet to 7.8 years and increased our average lease term to over five years.

This is the second successive year in which we have grown our fleet substantially. In 2014, we bought 22 aircraft, mainly through sale and leaseback transactions with airlines, increasing our fleet value by 22% to more than $3.7 billion. In addition, we have continued to monetize older aircraft at premiums to book value, demonstrating the strong inherent value in our fleet.

26.     On March 13, 2015, FLY filed an annual report on Form 20-F with the SEC for the quarter and year ended December 31, 2014 (the "2014 20-F"). The 2014 20-F reiterated the financial and operating results previously announced in the 2014 6-K.

27.     The 2014 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 by the Individual Defendants, stating that the financial information contained in the 2014

6

20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

28. On May 8, 2014, FLY issued a press release and filed a Form 6-K with the SEC announcing its financial and operating results for the quarter ended March 31, 2015 (the "Q1 2015 6-K"). For the quarter, FLY reported net income of $17.3 million, or $0.41 per diluted share, compared to net income of $3.6 million, or $0.07 per diluted share for the same period in the prior year.

29. In the Q1 2015 6-K, defendant Barrington stated, in part:

> FLY has started 2015 with strong first quarter results. Our investments have grown our fleet to 128 aircraft, an increase of 11 aircraft from a year ago, driving a 34% increase in total quarterly revenues. We are targeting $750 million in aircraft acquisitions this year and have acquired and identified $475 million of aircraft to date. Meanwhile, we continue to opportunistically trade aircraft, selling three aircraft in the first quarter for a gain of $1.9 million over book value.
>
> Our net income of $17.3 million, or $0.41 per share, is a significant increase over the first quarter of last year, ***and is largely due to our growing fleet.*** We also continue to return capital to shareholders, declaring our 30th consecutive quarterly dividend.

(Emphasis added.)

30. On July 29, 2015, FLY issued a press release and filed a Form 6-K with the SEC announcing its financial and operating results for the quarter ended June 30, 2015 (the "Q2 2015 6-K"). For the quarter, FLY reported a net loss of $58.3 million, or $1.42 per diluted share, compared to net income of $21.7 million, or $0.51 per diluted share for the same period in the prior year.

31. In the Q2 2015 6-K, defendant Barrington stated, in part:

> In the second quarter, FLY achieved a major milestone in its fleet rejuvenation plan with an agreement to sell a portfolio of 33 aircraft, transforming its portfolio and setting a course to drive stronger returns. . . . These sales accomplish several

key objectives, including lowering our fleet age, generating approximately $450 million of additional cash and reducing our financial leverage.

. . .

Following completion of these sale transactions, FLY will be in a very strong position to grow by reinvesting in newer, younger aircraft and generating higher returns for its shareholders.

32. On November 12, 2015, FLY issued a press release and filed a Form 6-K with the SEC announcing its financial and operating results for the quarter ended September 30, 2015 (the "Q3 2015 6-K"). For the quarter, FLY reported net income of $19.9 million, or $0.47 per diluted share, compared to net income of $15.4 million, or $0.37 per diluted share for the same period in the prior year.

33. In the Q3 2015 6-K, defendant Barrington stated, in part:

We have entered into agreements to sell a total of 57 aircraft with an average age of 13 years. Aircraft sales, combined with our purchase of seven newer aircraft, have reduced our average fleet age to seven years at quarter end, a decrease of one year over the prior quarter. We have also improved our cost structure by driving lower annual SG&A and interest expense.

Our aircraft sales have generated significant levels of investible cash, enabling us to simultaneously invest in newer, higher yielding aircraft and accelerate the return of capital to our shareholders. With our younger fleet, the financial firepower to carry out our growth strategy and our new initiatives, FLY will continue to grow the value of the business for our shareholders.

34. The statements referenced in ¶¶ 18-33 were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) during fiscal years 2014 and 2015, FLY had engaged in improper accounting with respect to intangible assets and liabilities for aircraft acquired with in-place leases; and (ii) as a result of the foregoing, FLY's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

35. On March 8, 2016, FLY issued a press release and filed a Form 6-K with the SEC announcing its financial results for the quarter and year ended December 31, 2015 (the "2015 6-K"). For the quarter, FLY reported net income of $27.7 million, or $0.68 per diluted share, compared to net income of $15.5 million, or $0.37 per diluted share for the same period in the prior year. For 2015, FLY reported net income of $6.6 million, or $0.13 per diluted share, compared to net income of $56.1 million, or $1.32 per diluted share for 2014.

36. In the 2015 6-K, FLY disclosed that the Company and the SEC were "currently discussing FLY's accounting policy for business combinations, including FLY's accounting policy for intangible assets and liabilities for aircraft acquired with in-place leases." The Company stated, in part:

> Discussions with the [SEC] are ongoing as of the date of this press release. While we currently have not concluded on the potential impact on our financial statements of the [SEC's] comments, if any, if it is determined after the conclusion of the [SEC's] review that FLY should separately recognize other intangible assets or liabilities from what has been previously recorded, the impact could be material to FLY's previously issued consolidated financial statements and require modification to its accounting for the current and prior year results reported herein. In addition, as a result of the ongoing discussions with the [SEC], FLY may not be able to timely file its Annual Report on Form 20-F for the year ended December 31, 2015.

37. As a result of this news, FLY stock fell $1.12 per share, or 8.2%, to close at $12.47 on March 8, 2016.

38. As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

9

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired FLY securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

40. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, FLY securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by FLY or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

42. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

43. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of FLY;

- whether the Individual Defendants caused FLY to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of FLY securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

44. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

45. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- FLY securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold FLY securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

46. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

47. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

48. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

50. During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions,

practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of FLY securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire FLY securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

51. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for FLY securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about FLY's finances and business prospects.

52. By virtue of their positions at FLY, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made,

although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

53. Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of FLY, the Individual Defendants had knowledge of the details of FLY's internal affairs.

54. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of FLY. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to FLY's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of FLY securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning FLY's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired FLY securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

55. During the Class Period, FLY securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and

misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of FLY securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of FLY securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of FLY securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

56. By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

**COUNT II**

**(Violations of Section 20(a) of the
Exchange Act Against The Individual Defendants)**

58. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59. During the Class Period, the Individual Defendants participated in the operation and management of FLY, and conducted and participated, directly and indirectly, in the conduct

15

of FLY's business affairs.  Because of their senior positions, they knew the adverse non-public information about FLY's misstatement of income and expenses and false financial statements.

60. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to FLY's financial condition and results of operations, and to correct promptly any public statements issued by FLY which had become materially false or misleading.

61. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which FLY disseminated in the marketplace during the Class Period concerning FLY's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause FLY to engage in the wrongful acts complained of herein.  The Individual Defendants therefore, were "controlling persons" of FLY within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of FLY securities.

62. Each of the Individual Defendants, therefore, acted as a controlling person of FLY.  By reason of their senior management positions and/or being directors of FLY, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, FLY to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of FLY and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

63. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by FLY.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  March 25, 2016

>Respectfully submitted,
>
>**POMERANTZ LLP**
>
>*/s/ Jeremy A. Lieberman*
>Jeremy A. Lieberman
>J. Alexander Hood II
>Marc Gorrie
>600 Third Avenue, 20th Floor
>New York, New York 10016
>Telephone:  (212) 661-1100
>Facsimile:  (212) 661-8665
>Email:  jalieberman@pomlaw.com
>          ahood@pomlaw.com
>          mgorrie@pomlaw.com
>
>**POMERANTZ LLP**
>Patrick V. Dahlstrom
>10 South La Salle Street, Suite 3505
>Chicago, Illinois 60603
>Telephone:  (312) 377-1181

Facsimile:   (312) 377-1184
Email:  pdahlstrom@pomlaw.com
**GOLDBERG LAW PC**
Michael Goldberg
Brian Schall
13650 Marina Pointe Dr. Ste. 1404
Marina Del Rey, CA 90292
Telephone: 800-977-7401
Fax: 800-536-0065
Email:  michael@goldberglawpc
          brian@goldberglawpc

*Attorneys for Plaintiff*